WILLIAM J. HOLBROOK & others, trustees, *vs.* LUESE S. STODDARD & others.

Norfolk.    April 4, 1933. — June 29, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Trust,* What constitutes, Construction of instrument creating trust, Trustee's duties as to upkeep of real estate. *Devise and Legacy.*

Where a will contains clauses relating to the disposition of the testator's property which are not entirely consistent with each other, the intention of the testator must be ascertained from consideration of the whole will.

Application of the foregoing principle in construction of a will, from which it was determined that

(1) All real estate of the testator was placed in the hands of trustees subject to rights of occupancy for life, free from rent, by the testa-

tor's widow and a daughter and her children of one parcel, and by a son, his widow (so long as unmarried) and his children of another parcel;

(2) While so occupied, the trustees had no duty to repair such parcels, but they were required from income to "pay all the taxes, from year to year, during their trusteeship, on the whole estate, including said life estate property, as well as the trust, and keep all the same well insured," and to keep in repair such property as was not so occupied;

(3) The trustees also were required to pay all mortgages existing "on any of the estate" at the death of the testator and any future mortgages placed by the trustees which were necessitated by the provisions of the will;

(4) In a parcel of real estate not specifically assigned for occupancy, which had no access to the public way except across the parcel set aside for occupancy by the widow and daughter and her children, the children of the testator's son and of the daughter had an undivided equal interest in common, and it was unnecessary until partition proceedings should be instituted by said tenants to determine what rights across the remainder of the homestead lot should be allocated for the use of the occupants and owners of such parcel.

PETITION, filed in the Probate Court for the county of Norfolk on May 15, 1931, by trustees under the will of Elliot Stoddard, late of Cohasset, for instructions.

The petition, material facts and a decree, entered in the Probate Court by order of *McCoole*, J., are described in the opinion. From that decree, Luese S. Stoddard, Nathan Souther, Elliot Stoddard and Alexander Stoddard appealed.

The case was submitted on briefs.

*R. S. Bowers*, for the respondents Eleanor Marsh and others.

*T. H. Buttimer*, for Luese S. Stoddard and another.

*R. S. Riley*, for guardian *ad litem*.

PIERCE, J. This is a petition in equity filed in the Probate Court for the county of Norfolk, in which the petitioners request the court to construe the provisions of the will of Elliot Stoddard which was duly proved and allowed on April 24, 1907. All persons interested in the subject matter of the petition accepted service of the same. A guardian *ad litem* was appointed by said court, and accepted the appointment, to represent persons unborn or unascertained who may be interested in said petition.

Elliot Stoddard left surviving him his widow, Sophia C.

Stoddard, and two children, Alexander and Sophia Louise, sometimes known as Luese S. Stoddard. The widow deceased on May 28, 1930. The son died in January, 1918. He left a widow, Ella Stoddard, who has since remarried, and four children, Elliot, Alexander, Eleanor (now Eleanor Stoddard Marsh) and Herbert. Luese S. Stoddard, as beneficiary under the trust, is interested in the specific questions to be determined by the court, and Nathan Souther, the only child of said Luese, is interested as a prospective beneficiary in the event that he survives his mother.

The testator at his decease owned certain real estate in Quincy, in Boston and in Cohasset. Among the items of real estate in Cohasset was a parcel containing about four acres, referred to in the will as the "homestead lot." On the "homestead lot" at the time of the decease of Elliot Stoddard was a house in which he and his wife and daughter lived, known as the "Homestead"; also, a house in which the son and his family lived, and which is referred to in the second paragraph of the will, and designated as the "Alexander house"; also a third house known as the "Meadow house"; also farm buildings. The "Meadow house" has no access to the highway except across a part of the "homestead lot." At the time of the filing of the petition the "Homestead" was occupied by the daughter, Luese; and the "Alexander house" and the "Meadow house" were rented and, so far as the record shows, are now rented.

The petition of the trustees asked the Probate Court for instructions as to their duty in reference to the specific questions which follow: "*First.* Is it the duty of the present trustees to rent the Alexander House, so called, and a tenancy in common of the Homestead Lot, if not occupied by either of the children of Alexander Stoddard, deceased, and to collect rents therefrom, and to pay taxes and insurance thereon, and keep the same in repair during the continuance of the trust? *Second.* In the event that the children of Alexander Stoddard, or any of them, do occupy the Alexander house and the tenancy in common of the Homestead Lot, should the present trustees pay the

taxes and insurance upon the Alexander house and keep it in repair and pay all existing, as well as future mortgages thereon? *Third.* Is the Alexander house and the tenancy in common in the four acres known as the Homestead Lot, a part of the trust estate, to be administered as such whether it is occupied by the Alexander children or not? *Fourth.* If the Alexander house and the tenancy in common of the Homestead Lot is a part of the trust estate, have the children of Alexander the right to occupy it free from rent, and if so, should the trustees pay the taxes and insurance and mortgages thereon and keep it in repair, and may the trustees mortgage the Alexander house and the tenancy in common of the Homestead Lot, for the purposes of repairs, up-keep and improvement of the Alexander house and the land immediately surrounding it? *Fifth.* If the children of Alexander own a fee in the Alexander house and the tenancy in common in the barn and the Homestead Lot of four acres, how much of the four acres and what specific part of the sâme is allocable to the Meadow House, so called, and what rights across the remainder of the Homestead Lot should be allocated for use of the occupants and owners of the Meadow House and lot? *Sixth.* Have the trustees, since the death of the widow Sophia C. Stoddard, authority to make repairs on, and pay taxes and insurance upon the Homestead House and upon the land immediately adjacent thereto? *Seventh.* If the Alexander house and the tenancy in common of the Homestead Lot is not a part of the trust estate and is not occupied by the children of Alexander, is it the trustees duty to rent the Alexander house, collect the rents, pay the taxes and insurance thereon and make repairs thereon, and keep the Alexander house and the land immediately adjacent thereto in condition so that it may be occupied by the children of Alexander during their lifetime or the lifetime of the survivor of them? *Eighth.* Should the trustees keep the farm buildings in repair, at the expense of the trust estate, and keep the same insured and pay the taxes thereon, and should the trustees, under all the circumstances, rent the farm buildings and collect the rents therefrom? Wherefore,

your petitioners being in doubt as aforesaid, pray: (a) That this honorable court will construe the provisions of said will and will instruct them as to their duties thereunder, particularly in reference to the specific questions above set forth; (b) that a guardian *ad litem* or guardians *ad litem* be appointed for all persons not ascertained or not in being, who are or may become interested in this cause; (c) That this court may determine the amount of compensation of counsel engaged in this proceeding and direct its payment, if proper, from the property in the hands of your petitioners as trustees; (d) for such other and further relief as to this honorable court shall seem meet and as law and justice shall require."

The Probate Court after due hearing ordered that the trustees be instructed: "First: That the trustees have no duty or interest with respect to renting or repairing the so called Alexander House, the will specifically sets forth that it is the duty of the trustees to pay taxes, pay interest and mortgages and insure said property, and nothing more. Second: The trustees, in the event that the children of Alexander Stoddard, or any of them, shall occupy the Alexander House, shall pay the taxes and insurance on the same also the existing and future mortgages. Third: The trustees are instructed that the Alexander House, nor the four acres of land known as the Homestead Lot are a part of the trust estate and should not be administered as such. Fourth: That the Alexander House and tenancy in common of the Homestead Lot is not part of the trust estate; that the children of Alexander, by the terms of the will, as set forth in paragraph 4, have an absolute use to the Alexander House and an interest in common with Sophia, the daughter of the testator, in the Homestead Lot, and that the only duty of the trustees with respect to the Alexander House is to pay the taxes, insurance and mortgages thereon, such payment of taxes, insurance and mortgages to be paid out of the principal of said trust estate. Fifth: That no part of the so called Homestead Lot of four acres is allocable to the Meadow House so called, or for the use of occupants and owners of the Meadow

House and lot.   Sixth: That the trustees have no authority to make repairs on the Homestead House occupied by the daughter of said deceased, but they are obliged by the terms of the will to pay the taxes and insurance and mortgages on the same.   Seventh: That it is not the duty of the trustees to rent the Alexander House nor collect the rents and make repairs on same when not occupied by the children of Alexander but it is the duty of the trustees to pay taxes, insurance and mortgages on said property and nothing more.   Eighth: That the farm buildings so called are not part of the trust estate and the trustees have no power to keep them in repair; that said trustees are, by the terms of said will obligated to keep said farm buildings insured, and pay the taxes and mortgages thereon."

From this decree certain of the respondents appealed and the case is before this court on such appeals.

The will of Elliot Stoddard contains seven clauses relating to the disposition of his property which are not entirely consistent with each other.   In these circumstances the intention of the testator must be ascertained from consideration of the whole will.   *Gardiner* v. *Pelton*, 260 Mass. 577, 582.   The first clause of the will gives "To my wife, Sophia C. Stoddard a life estate, during her life in the house and premises where we now live in said Cohassett to be used and occupied solely by her and her family." The second clause gives to his son Alexander a life estate "of the house on the homestead lot . . . built by me for him where he now lives, (he and his family only to occupy it) and the use in common with my wife or daughter Sophia as the case may be of the homestead lot of land (about four acres) on which the homestead house now stands and the barns thereon."   The fourth clause provided for the devolution of title to the Alexander house after the death of the son.   "If the present wife of my said son Alexander should survive him, and he should not be living at my decease, she is to have the same rights and benefits in the property herein provided for him during his life, as he had or would have had; to continue as long, and only so long as she remains his widow, but if he and she should both be living,

at my decease, and she should survive him she is to succeed to all the rights and benefits in the property herein provided for him; and to have the same during the period for which the real estate is to be held in trust as hereinafter provided unless she should cease to be his widow by death, or marriage before the end of that period, in which event, her said rights and interest are to cease; and her children, by her said husband, are to succeed to, and enjoy the same rights and benefits which had been enjoyed by her, during the remainder of that period, and at the decease of my said son Alexander, the property, of which he and his wife had had said life estate, or use, or income, or occupancy as aforesaid, is to go to his children their heirs and assigns forever, subject to the foregoing provisions and to the trust and limitation hereinafter mentioned." The third clause provides for the testator's daughter and the disposition of the homestead, as follows: "To my daughter Sophia, lately married to Mr. William O. Souther Jr, if her mother should not be living at my decease, a life estate during her life, of the homestead house in Cohassett, where I now live, to be occupied only by her and her family; and all the household furniture therein absolutely; and one half of the use and income during her life, of the real and personal estate as hereinbefore provided for her mother, to be collected and paid her by the Executors, and the same use in common of the same land; but if her mother should be living at my decease, then, after her mother's decease, she is to have the same sole occupancy of said homestead house and use in common of said land, as her mother had while living, and one half the use and income of the other property of which her mother had had the use and income while living; which occupancy, use and income, and use in common of said land, she is to have during her life; and at her decease the property of which she had had the occupancy, and her said half of said use and income of property, are to go to her then living children, if she have any then living, and their heirs and assigns forever, subject however to the trust and limitation hereinafter mentioned; but if she should not leave any living

children at her decease, said property and said use and
income, are to go to the then living children of my said
son, Alexander and their heirs and assigns forever, subject
however to said trust and limitations." The sixth clause
reads as follows: "No husband of my said daughter is to
have any interest in, or control of any of said property
hereby willed to her, except as one of the executors and
trustees of this will, neither shall it be liable for, or subject
to any of his debts, and the provision herein made for her
is made upon the express condition, and limitation." The
seventh clause reads: "None of said real estate shall be
sold or conveyed out right till at least twenty one years
next after my last surviving grandchild, which may be
living at my decease, shall die, but the same except the
properties in which life estates are created by this will, is
to be held in trust till then by the executors of this will
and trustees, for the use and benefit of the beneficiaries
herein named; and to be managed by them, as such trustees
at their discretion subject to the provisions of this will,
and among other things, may rent the same, collect the
rents, and all debts and dues of the estate make such
investments, repairs, and improvements, including new
buildings and alterations in and addition to any of the
buildings as they, or a majority of them deem best; and in
doing so may use such of the income of the property, not
inconsistent with the provisions of this will, as they deem
proper; and may also mortgage any of the property (so
held by them) for those purposes, but not beyond one third
of the assessed value of the whole real estate thus held in
trust by them; and they are to pay all the taxes, from year
to year, during their trusteeship, on the whole estate,
including said life estate property, as well as the trust,
and keep all the same well insured, and keep all said trust
property in good repair, and pay all existing as well as
future mortgages on any of the estate; and, as soon as
may be after my decease, they are to pay all debts justly
due my creditors and also the three thousand dollars to my
said son Alexander, herein provided for him; and collect,
receive and take charge of all debts, dues, and cash on

deposit, in my name, and from time to time, according to the true intent and meaning of this will, they are to pay over such of the net income of, the property to the parties entitled to it as may be needed to meet the requirements of this will; and at the end of the period of their trusteeship, they are to transfer convey, and deliver all the property, in their hands as trustees, less a proper compensation for their services, to the parties entitled to it under this will."

The dominant intention of the testator manifested in his will was to devise to his wife, son and daughter life estates for occupancy solely by them and their families. The will strictly construed gives none of them a right to free disposition of the several estates devised them. Any disposition of their several interest in the homestead lot was subject to the provision, in the case of his widow, that "the house and premises . . . be used and occupied solely by her and her family"; and in the case of the devise to his son, that "he and his family only [were] to occupy it." The fifth clause reads: "After my wife's decease if living at my decease, the net income of the property, which she had been accustomed to receive, is to be shared equally by my said son Alexander, and my said daughter Sophia or their children, as the case may be as hereinbefore provided; but my Executors [they were also trustees] may use so much of the income of the property (consistent with the foregoing provisions) as they deem proper, in the management of the estate for taxes repairs insurance, improvements &c, and are to distribute the balance from year to year, or oftener if needed, to the parties entitled to it under this will." This provision operates to place in the power and disposition of the trustees for the purposes named the use and income of all the real estate "wherever situated, in Cohassett, Quincy, Boston or elsewhere, except the life estate, and use in common" of the house on the homestead lot in said Cohasset built by the testator for his son Alexander. The seventh clause of the will provides: "None of said real estate shall be sold or conveyed out right till at least twenty one years next after my last surviving grandchild, which may be living at my decease, shall die, but the same except

the properties in which life estates are created by this will, is to be held in trust till then by the executors of this will and trustees, for the use and benefit of the beneficiaries herein named." Since the widow of Alexander has remarried their children under clause Fourth of the will have succeeded to the rights and benefits which their mother would have had had she remained unmarried during the period for which the real estate is to be held in trust under clause Seventh of the will. The provision in clause Fourth which reads "and at the decease of my said son Alexander, the property, of which he and his said wife had had said life estate, or use, or income, or occupancy as aforesaid, is to go to his children their heirs and assigns forever, subject to the foregoing provisions and to the trust and limitation hereinafter mentioned," refers, as in clause Third, to the half interest of Alexander and his widow which they had in common with the daughter Sophia after the death of the mother of Sophia and devised the Alexander house and premises in fee to the children of Alexander, their heirs and assigns, "subject to the foregoing provisions and to the trust and limitation hereinafter mentioned."

We think clauses "Second," "Third," "Fourth," "Fifth" and "Seventh" collectively established a trust upon all the real estate of the testator, subject to the right of occupancy of the tenants for life and their families, with remainders in fee to the son of the daughter Sophia and to the children of Alexander, in both cases subject to the provisions of clause Seventh; and that it would be the duty of the trustees under clause Fifth of the will to rent the Alexander house and the tenancy in common of the homestead lot, when these properties ceased to be occupied permanently by any of the children of Alexander, and that it was their further duty to collect rents therefrom, to pay taxes and insurance thereon, and to keep the same in repair during the continuance of the trust.

We think the second question should be answered as follows: The trustees should not repair, but should pay the taxes and insurance, under the provision of the seventh clause, which reads: "they are to pay all the taxes, from

year to year, during their trusteeship, on the whole estate, including said life estate property, as well as the trust, and keep all the same well insured, and keep all said trust property in good repair"; and we further think that they should pay all mortgages existing "on any of the estate" at the death of the testator or any future mortgages placed by the trustees which were necessitated by the provisions of the will.

The trustees are instructed in answer to the third request that the Alexander house and the tenancy in common in the four acres known as the homestead lot are a part of the trust estate to be administered as such whether it is occupied by the Alexander children or not, except that they are not to repair the same while occupied by the life tenants.

The trustees are instructed on the facts posited in the fourth request that the children of Alexander have the right to occupy the Alexander house free from rent and that the trustees under the seventh clause of the will should pay the taxes, the insurance, and the existing mortgages; and that under the fifth clause and under the general scheme of the will the taxes and insurance of the Alexander house and of the tenancy in common are to be paid out of income.

The trustees are instructed in answer to the fifth request that the children of Alexander and of Sophia have an undivided equal interest in common in the Meadow house, so called, and it is unnecessary until partition proceedings are instituted by said tenants to determine what rights across the remainder of the homestead lot should be allocated for the use of the occupants and owners of the Meadow house and lot.

The trustees are instructed in answer to the sixth request that they have no authority since the death of the widow during the occupancy by the life tenant to make repairs on the Homestead house and that they are required under clauses Seventh and Fifth to pay the taxes, insurance and mortgages upon the Homestead house and upon the land immediately adjacent thereto, the taxes and insurance to be paid out of income.

The trustees are instructed in answer to question seventh that, as shown by the answer to request "*First*," the Alexander house when not occupied by any of the life tenants falls into the trust estate under the general scheme of the will and is to be managed by the trustees as such. When occupied by any of the life tenants, it is to that extent taken out of the operation of the trust and the duty of the trustees is to pay only the taxes and insurance on the same.

We think the eighth request should be answered on this meagre record that the farm buildings should not be kept in repair at the expense of the trust estate while they are occupied as life estates and not as a part of the trust estate, but that the taxes, insurance and mortgages should be paid under clause Seventh subject to the limitation upon the power to mortgage hereinbefore pointed out.

Costs as between solicitor and client to be paid out of the estate are to be in the discretion of the Probate Court.

*Decree as modified affirmed.*